Our final case this morning is No. 14-1556, Helferich Patent Licensing v. CBS Interactive. Mr. Panner. Thank you, Judge Dyke, and may it please the Court. The Board's conclusion that Smith renders obvious the information or message identifier element in the 241 patent should be reversed because when that term is given its correct construction, Smith does not disclose it. The basic distinction between Smith and the 241 patent is that Smith relies on pre-existing messaging systems, email, voicemail, fax, that involve user accounts. And with such systems, the notification that a user has a message waiting in her inbox does not need to specifically identify the message. Rather the notification merely has to tell the user that a message is in her inbox and provide enough descriptive information that after the user has entered her password and logged in to her inbox, she can pick out that message. The 241 patent, by contrast, does not require any pre-existing messaging system. Rather it allows a content provider to store information anywhere on a server, anywhere that's accessible to the network, and provides the user with an identifier that identifies the information specifically. And as the petitioners now concede in their brief on page 29, an information identifier must have sufficient data to identify a particular object. And the notifications in Smith do not have such identifiers. In fact... Didn't the board find the contrary? I don't think so, Your Honor, because what the board found, what the board found was that it was sufficient that after receiving an identification, there was sufficient information in the notification that's disclosed in Smith that the user could then find the message in question. But what that ignores is that when you have a pre-existing messaging system, there's already an understanding of where the inbox is based on the login information. So that information doesn't need to be included in the identifier. And indeed, in talking about the email example, a petitioner's expert said that he doubted that that would happen. He said you wouldn't want to include specific information about where a message is because it wouldn't be secure. And so, again, the difference is... There's no question that you could locate the message based on the information that was described for emails, right? That's true, Your Honor, but again, that's not something that Smith invented or disclosed. That was based on pre-existing systems in which there were email systems that, after all, after providing the user with notifications that they had some emails, allowed for interaction between the user that would allow the user to find a message among a limited universe within the inbox. So if you think about the difference, and I think there's a couple of illustrations in the specification in the 241 patent that help to illustrate the difference. Let me start with an analogy and go to the two examples in the specification. The analogy that we used in our briefs was talking about libraries. And if you were a graduate student and had a shell... In that case, Your Honor, let me turn to the specification if the analogies aren't helpful. And let me go to two points about what the 241 specification talks about that Smith clearly would not allow. And the first is the specification in the 241 patent specifically talks about providing a notification to multiple users of the availability of a piece of information that is stored somewhere. So if you think about what a message ID does in that circumstance, I can send a notification to a hundred or a thousand or a million different people and say, there's an article that's available on this particular location on a server, and you can go get it. Because I'm telling you exactly where it is. I'm telling everyone that receives the notification where that is. You can't do that with Smith, because Smith, again, relies on the pre-existing messaging systems that have inboxes. And so in order to provide that article to a million people, you would have to send the article to a million inboxes, and that would then allow for the user to say, okay, message number three in my inbox is the article. But that would not, the message ID in that circumstance would not allow you to provide multiple parties. There's another example in the specification, which refers to forwarding a message. It's in column 10 of the 241 specification. And it talks about the fact that a user who wants to forward a message can tell the system either to send the message itself or to send the message ID. Now, again, you can't do that with Smith, because Smith is talking about, is simply telling a user that they have a message in their inbox, and then relies on the fact that there are pre-existing systems with pre-existing protocols. Does Smith tell them they have different types of messages? It does, Your Honor. Could it be like a fax, or... So the fact that then the user can select a particular message, and then under Smith, they're given access to that message, then it's uploaded to their system, or it's sent to them. Doesn't that, wouldn't that show up with CETA, that Smith has to have a code, has to have a way of further identifying the unique identifying address of that message? No, Your Honor. Why not? Sure. Okay. I think it does go absolutely right to the heart of the difference, and again, the examples I've given are, it took a while for the light bulb to go off for me. And because it had been emphasized for a long time that Smith relies on these underlying systems, the 241 clearly does not. And I kept trying to understand, make concrete for myself, what's the difference there? And again, for me, the light bulb went off, and there's multiple examples in the specification, but the light bulb went off when I was thinking about the multiple recipients. And the difference is, when you have a pre-existing system, a lot of the information about what the message is, where it is, is already something that the parties have by virtue of the fact that there's an existing account. If you look at what the specification... So, what you're saying is, with respect to Smith, that the message identifier is there, if it's an individual message, but if you're trying to get a message to multiple people, that that's not what Smith discloses, is that what you're saying? That's not what I'm saying, Your Honor, so let me try to be clear. And part of what makes the record in this case a little bit... Take the individual message, okay? Why isn't it true that Smith must have some sort of code or something for you to be able to reach the message, find it in storage? Because what Smith does is it says, Judge Dike, message number three in your inbox is now available, and it's from sender Q. Now, the fact is, that doesn't uniquely identify a message, because a lot of the information that tells you where does that result... The information may not be there on the screen, and I assume in the patent it's not on the screen either, but there is a code that enables it to find storage, right? No, Your Honor, and again, this is the key, is that because it relies on a pre-existing account, a pre-existing email account, when it talks about the facts, it talks about an area in storage that's dedicated to the user. You don't need to uniquely identify either the location or the message, because once you log on through that interaction, you have told the system who you are, and the system now knows where your area is, all right? And so it can say message number three, and indeed that's what happens in the email. Is this really a discussion as to the address or identifying information of the user? It's not. We're talking about identifying information of the message. Exactly. What does it matter whether you have a user account when you log in or not? Because if you look at the claim language, Your Honor, what the claim language says in the 241 patent is that there must be a message identifier or an information identifier that identifies the message. So there is some field that uniquely identifies a particular piece of information. And I think that with the concession and petitioner's brief on page 29 of their brief, we seem to agree on that. And the point is that if you already know, if some of the information about where the message is and what it is comes from the login information, you don't include that information in the identifier. And that's why there's a fundamental difference, and indeed that's why Smith teaches away from what the 241 patent does. Because the 241 patent is saying I can send a unique identifier that can point to a piece of information anywhere on any storage system. Smith cannot do that, and it doesn't suggest that you would want to do that. Because what Smith says is we have perfectly good email, we have perfectly good voicemail, we have perfectly good fax. So you're saying that Smith supplies sufficient information to enable you to do that, but Smith doesn't in fact do that? Is that what you're doing? What I'm saying is that... Answer that question. The information that is supplied with respect to the email example in Smith, you agree that that information is sufficient to locate the item in storage, correct? It's difficult for me to give a yes or no answer to that question. Plainly after the notification is sent in Smith, the user and the device has sufficient information to retrieve the email, but it need not be sent in the notification. Recall that in the 241 patent, the selective call signal includes an information or message identifier  There's that piece of... And then there's dependent claims which make it even clearer when they talk about a code or a unique code or an address of information in storage. And so what it's saying is it's pinpointing a unique piece of information. And the contrast to Smith is that again, if you have your shelf at the library, I apologize for using the analogy again, but it helps me. If you have the shelf at the library, I can say this book is on your shelf. And you can find it. But nobody else can unless they know where your shelf is. And they wouldn't. Before we run out of time, I want to address the motion to amend issue. Certainly. And when you made the motion to amend, what did you argue or did you argue that these new limitations made the obviousness rejection go away? Well, there are various limitations, but the key one that goes straight to this... I'm not asking you what it was. I'm asking what you argued to the board when you made the amendment. We argued to the board that to the extent that there was a lack of clarity, and remember in the initiation order, the construction of the information or message identifier was much, much, much broader. What did you argue when you made the motion to amend it to overcome the obviousness rejection? That the new claim language made clear that the message identifier, information identifier was the same as the message ID in figure 11, which was a specific code that would identify the location of a piece of information on the server. Well, how did that change things? Because the board had already found that claims that required a code were obvious. How did that change anything? The board hadn't found anything. The board had simply initiated the proceeding at that point. All right, but later on when it found that the claims that required code were obvious, so this didn't distinguish the amended claims from the original claims in that respect, did it? Well, Your Honor, the board never reached that issue because they found that... Well, what's the answer to my question? The answer to the question... They found that the claims that required a code were still obvious, and you're telling me that the motion for leave to amend said these added limitations solve the obviousness problem because they require a code. Am I misunderstanding? I'm not sure you are. I do think that to the extent that... I mean, the board never reached this issue, so there wasn't an answer to your question in the record below. I do think that the dependent claims, the code, unique code, address of information claims, are much more... The board's ruling with respect to those is much more clearly... Well, it's especially clear that those are erroneous. Well, then I understand that, but I'm asking a different question. I'm saying if you assume that the board was correct with respect to the original claims, it doesn't seem to me that the argument that you made to the board about the proposed amendment added anything new because it was just saying, ah, these are different because there's a code here. But, Your Honor, procedurally what happened is that at the... What you're saying is it might be harmless error, and what I would say in response is we did not have the... What the board should have done is permitted those amendments because we did show that they went to the grounds of unpatentability that was raised in the proceeding and then addressed those on the merits because there were additional limitations that were added with respect to sending an acknowledgement and that were not addressed with regard to, in some of the claims, that were not addressed. So there were additional limitations that were added in some of the other claims. But not argued. No, they were argued, Your Honor. The point is that, again, and the board just never dealt with any of that. The motion to amend in its entirety is in the appendix. I can find the site for you, Your Honor. But the point was that each of the... We did show how each of the proposed amendments reached the grounds of unpatentability that was asserted in the petition. So we did satisfy what was required under 42.121, the regulation that the PTO adopted. Before you sit down, and I realize we're well into your rebuttal time, but can you speak very briefly as to the denial of your request to supplement? I'm really interested with respect to the facts. Certainly, Your Honor. So this was a document that had been provided in discovery. It was... Just to back up a second and give context. The Smith reference had been asserted in 12, or considered by the board, in 12 prior examinations or re-examination proceedings that had always been found, including in a detailed proceeding involving these petitioners, to be distinguishable, not to disclose the limitation at issue here. During... What occurred was that this document was a fax that included... After the fax came into your possession, how long did it take for you to get it to the board, or try to get it to the board? Well, when it was discovered, we tried to get it to the board within a week. It had already been provided to petitioners. The only reason it was a week was that it took that time to get the hearing to ask for the motion to submit it. So you had it in your possession for a week, and you handed it over to the board? Well, I want to be clear about... You had it in your possession long before that. Yes, we had it in our possession long before. We did not locate it before that. It had also been provided in discovery. Again, the documents from the inventor were fairly voluminous. They'd been provided. This had not been found before. So it wasn't a newly discovered document. It was something that was in this big volume of materials been collected for quite a while? Correct. The significance of it was newly appreciated, but it had been in possession. How would that be if it goes through the conception date? Again, because Smith had never been a problem before, and so it was only after the proceeding was initiated with the finding that there was a reasonable probability that Smith would be found to render this limitation obvious that the document was that we appreciated that. Again, that's not in the record because we weren't given the opportunity even to file a motion to submit the information to the board. Okay, thank you, Mr. Kline. We'll give you two minutes for a moment. Mrs. Reister, is that? Good morning, Your Honor. May it please the Court. I'm going to address the substantive issues, and Mr. Lamarco will be providing the primary remarks on the motion to amend and the excluded evidence, but of course I'm happy to answer any questions that you may have on that. I wanted to start in talking about this issue that they've raised for the very first time in their reply brief about broadcasting to multiple users. This is an issue that was not raised in the opening, nor was it raised in the proceedings below. What they allege is that the 241 system is different than Smith because it can broadcast messages to multiple devices, but there's nothing in the claim that limits the 241 patent to this broadcast functionality. Claim 1 explicitly recites transmission to one or more devices, so prior art that teaches transmission to one device is sufficient to show the limitations of one or more devices. And not only that, HPL didn't invent broadcast messaging. There's prior art in the record already, the Alanara reference, that clearly teaches broadcast messaging. But because they never raised this issue before the board, the board did not have any opportunity to make any findings about broadcasting. And with respect to storing messages in an inbox, and that's how we're distinguishing the Smith reference, because Smith stores in an inbox, I'd first like to say that there's absolutely nothing in the claim that excludes any particular type of storage or addresses at all in the claims where things are stored. And in fact, in the 241 patent, it explicitly discloses that the 241 patent stores things at user locations and has email inboxes just like the situation in the Smith patent. The key point is that Smith operates the same way as the claims of the 241 patent. The notification enables direct retrieval of a specific message. And Dr. Mitchell explains that persons skilled in the art would recognize that Smith uses a unique identifier, like a code, to do that. And they've never rebutted Dr. Mitchell's testimony. What they rely on are these so-called interactions where you have to log in and send these interactions to find the particular message. Well, what they're referring to there is an email protocol that was in the record below called POP3. And that protocol was referred to as Exhibit 1025 below. And what they say is that Dr. Mitchell, our expert, admitted all sorts of things about the POP3 protocol that you would have to log in and so forth. But any purported admission about POP3 or this Exhibit 1025 is completely irrelevant because HPO has no evidence that Smith incorporates this particular email protocol. Smith is very different from conventional email servers like POP3. And it's because Smith teaches retrieval of specific messages selected one by one in order to preserve memory space in the phone. And this is the precise problem that Helfrich claimed that it solved. Smith doesn't tell us exactly how a particular message is retrieved. Smith clearly discloses that it repeatedly teaches that the notifications enable direct retrieval of a specific message. And Dr. Mitchell testified that a person of skill in the art reading that would recognize that in order to accomplish that functionality it would use a unique identifier like a code. The idea is that it's inherently disclosed. Well, Dr. Mitchell testified basically two things. He testified that it is... Smith inherently must do it this way, right? That one skilled in the art would recognize that Smith was using a unique identifier like the code to be able to have universal retrieval of those selected messages. So it's not the... Smith is not retrieving based on the information in the email message about who the user was and so on and so forth. It's using an undisclosed code for the retrieval, right? It's using a code, which could be a number or any types of thing to formulate that code, but the point is that there's something unique in the notification message that is enabling Smith to identify where that message is and to retrieve it. So Mr. Panner raised another argument that Dr. Mitchell had testified that with respect to sending codes back and forth, he said that he doubted that that would happen in terms of sending a particular message ID. We just want to make a couple of points about that. The particular testimony that he's referring to is at A6944. And at A6944, Dr. Mitchell was not testifying about Smith. Dr. Mitchell was testifying again about this POP3 email protocol, not Smith, something else. And importantly, after Dr. Mitchell said, I doubt that would happen, he went on to testify that it's not usually done that way, but a configuration could be possible. And Dr. Mitchell also testified again that the way to make Smith work the way it does, one would naturally use a number or some type of a unique code. So we submit that the Board's final written decision was correct and it should be affirmed. Okay. Thank you. May it please the Court, Your Honors. I'm addressing the aspect of the Board's decision, the denial of patent owner's motion to amend and the denial to supplement authorization to seek a motion to supplement late information. So, I mean, on the face of it, the regulations are not entirely clear, right? To succeed on a motion to amend, you have to show, you have to overcome the rejection that's otherwise been entered by the Board, right? Well, I guess what's happening here is it's a little bit different because there is no rejection, so to speak, the way there is now. But the motion is made in advance of the Board decision, right? Right. So I guess what the Board is saying is that in addressing the motion to amend, that the motion to amend will only be granted if it solves the problem which the Board ultimately finds with respect to the claims, right? Is that the way it works? Yeah, I think that's an accurate characterization. What we've got is a petition comes in. They bring forth grounds of unpatentability of particular claims. The Board assesses that. If certain claims are deemed, there's evidence showing unpatentability, and the patent owner can come forth with a motion to amend and say, I want to substitute a claim, for example. And the motion to amend is addressed in the final decision, is that right? That's correct, Your Honor. So at that time, they know what they've decided. Right. And they can assess whether the motion to amend solves the problem that they found. Right. And I think it's more than just solving the problem that they found because what the Board has said, and we've applied our rules that way, is when you come forth with a new claim, a claim that was never in this patent before, the Board is saying to the patent owner, you need to give us an assurance that what you've proposed in your motion to amend is a patentable claim over prior art that you're aware of. That's basically what the Board said. But the regulation doesn't say that all that clearly, right? Well, I think the way we see the regulations is there's actually two regulations. There's one regulation that talks about motions to amend and the mechanics of how you would submit that. And then there's another regulation about motions in general before the Board. And motions in general before the Board specifically articulates that the burden is on the movant to prove or to meet the burden to prove that they're entitled to the relief that they request. And this is a motion, just like any motion, and the relief that the patent owner is seeking is amendment to their patent. Yeah, but it all depends on what the substantive standard for amendment is. And that's what's missing in the regulation is the substantive standard of what you have to show to get the amendment. Well, I think the Board's approach, the agency's approach to the regulations is, look, you're coming in and trying to amend your patent, and before we're going to let you change that patent with a new claim, you're going to have to give us up front something that shows the patent. Well, that would be a reasonable regulation. The problem is that that hasn't been promulgated. Is there any ongoing process to clarify the regulation? Well, currently we think the regulation does say that. We think when you read 42.20 and you read 42, I believe it's 121, the two regulations together, they do, we believe, and not only that, the Board has issued other decisions that explain what has to be in a motion to amend. We think there is adequate notice, not just in the rules, the rule history. But the answer is there's nothing planned to clarify that? Well, currently I believe there was a public blog by the director of the PTO saying that in the event, when we talk about motions to amend, that the PTO does consider what the public has to say, and in this instance where we talk about burden on the patent owner to come forth and show patentability over what? Over prior art in the record? Over prior art that you're aware of? That question, I believe the blog did say, the agency is hearing that and will consider that. Blog? Right, yeah. I mean, right now there's no proposed rule, if that's what you're asking. Is there a Federal Register notice with a proposed rule? Not at the moment, but the agency has expressed an intent to talk about that topic and take feedback from the public, and keep in mind, the rules are relatively new, and the rule process is an evolution where rules are made, we go through a rule process, we have a rule history, we do our best to explain the rules, we apply the rules, and then, yes, there are refinements that take place to those rules, and it is my understanding that refinements will take place, but we still believe, in this instance, this motion to amend was deficient for a number of reasons. I think the board listed three different reasons why it was deficient, and that's why it denied the motion. What about the question of our deference, which is not one that we've decided yet, as to whether the board, as opposed to the director, has the ability to interpret the regulations and earn deference by doing so? Well, all of our rules are promulgated by the director, all of them. These are board rules that were promulgated by the director. What case says that where one part of the agency promulgates the rules that another part of the agency has the authority to interpret them and earn our deference? I believe we cited McDaniel in our case,  and I believe the board applied that rule, and I believe in McDaniel this court spoke about how an agency gets deference in interpreting its own rules. So I believe when the board applies a rule and interprets the rule, yes, indeed, that's viewed as the agency interpreting the rule. But the board doesn't promulgate the rule. The director promulgates it. Right. The director promulgates the rule, but the board acts on behalf of the agency when it applies the rules. I mean, that's what's happening. When you get that decision that you're reviewing right now, the board decision, that is the final decision of the agency, and that's what's being reviewed by this court. So I don't really see the difference. I mean, the fact is the board applied the rule and interpreted those rules on behalf of the agency when it applied them, and I think that's very similar to what happened in McDaniel, which I think we did cite in our brief. Yeah, page 20 of our brief, Your Honor, for the proposition. An agency's interpretations of its own regulations is normally entitled to considerable deference. And that interpretation... And that's talking about the board's interpretation of the director's regulations? Right. Well, that's exactly what happened in McDaniel. There was a rule that the agency promulgated, just like this rule, and the board applied it and interpreted it, and then Ray McDaniel says the agency's entitled to deference, and it was the board that was doing it in that case. So that's exactly very similar to the question that you're asking. I'm just... you know, it's... We didn't... that's not our Supreme Court case, but it's the same principle at the Federal Circuit level. But anyhow, we... Yes, the agency is always considering input. For example, I think one thing that the agency spoke about was the public was found problematic that there was a 15-page limit for motions to amend. And I believe the director announced that, well, we understand that. We're sensitive to the fact that 15 pages may be too short of an amount of pages. And I believe the director said, yeah, there's going to be a change in policy where they're going to give you 25 pages. And what will happen is the board, in its scheduling orders, will provide the 25 pages. Now, up until this point, if someone wanted 25 pages, they could have always moved for leave to have 25 pages, just like you can ask this court for more words if... Yeah, if our word limit's not enough, we come to the court and we ask for more words. And if the court finds our request is justified, the court permits us to have the more words. Similarly, if a particular patent owner came forth with a motion to amend and they felt 15 pages wasn't enough, they can ask the board for more pages. Now, the agency has said, we're going to give you 25 pages. So that's an example where the policies and the procedures are evolving to accommodate and work with the public to make sure the process works. But I still... That doesn't mean we think that this motion to amend in any way was improperly decided. We think the board properly decided this motion in denying it for the reasons expressed in our brief, Your Honor, as well as the board decision. Okay. Were there any other questions, Your Honor? No. Mr. Panner, you have two minutes. Thank you very much, Judge Dyke. I think that actually your question to Ms. Reister went right to the heart of it. And you said, didn't the board find that there was inherent disclosure in Smith of this idea of a code or a unique identifier that allowed you to go to the information? And what I think that the evidence shows is that it is not necessary to have that unique identifier, much less a unique code or an address of the information in storage, to permit the retrieval of a message after interaction between a user and the preexisting messaging system. And that is why the back and forth about the email system that was understood at the time is so important. In talking about, for example, how voicemail is retrieved in the specification of Smith, what it says is when you press the button that says, I want this voicemail, all that's happening is that instead of your having to enter the touch tones to be able to get your voicemail, there's a system set up so that the phone will do it automatically. In other words, there's nothing new. There's no sort of special identifier sent. There's simply an interaction that's automated on the phone. And this was something that petitioners conceded an argument before the board. This is an overlay for existing messaging systems in which there's already methods for retrieving. And so there's nothing in Smith that discloses that. The email example is very important because if you read through the disclosure in Smith and you read the email example, it says, you know, you select the message and then you can retrieve it. And I think it's natural to say, well then there must be some sort of a code that allows you to do that. And the reason why the testimony of Dr. Mitchell on Cross and the POP3 disclosure is so important is because you don't need a unique code and indeed you would not use a unique code to identify that email message. Instead, what you do is you have this pre-existing… you have a message that says you have mail. You touch that and it takes you and downloads the list of mail that you have, all the email messages. And then you select the one that you want and then that takes you to the precise email message. And under Smith, it's that latter part. It's going from the email message and then clicking on that and it takes you to the specific email message. I think that's right and there's two points about that which is why Smith doesn't render the 241 approach obvious. Remember, 241 says that the selective call signal, the initial page includes a message identifier. So it's in the notification. That's not the way it's done with the email example that you've talked about. Instead, you log in, then you get the list of messages and you would correlate it and pick the one that you want. And if you read the Smith claim, what it says is you send a sender and a message type in the notification. That's what's included. And again, the key difference is that the 241 includes that… So I was saying there were two points. The first is that in 241, that unique identifier is included in the selective call signal that's sent out as the page. The second difference is that there's nothing unique about a number 34567. It's only unique because you've logged in and said, I want to look at my inbox. I don't want to… through information that's not sent in the notification, and that if it went to anybody else, they would look at that and it would say message number 7 from Pattern. The fact that your list of messages pops up when you log in, that also implies that a message has been received by your computer that there's this new mail item. So what happens in Smith is that when there's email received, there's a separate SMS message that's sent out and it says there's an email, and what the claim is is it would disclose the sender and the message type. So there's an email from Pattern. And then there's nothing further that's claimed or disclosed about how, after you go to retrieve that email, the email is picked up. But what became clear through the testimony is that there are perfectly good ways to do that that do not involve including any kind of a unique ID in that notification. And indeed, that's why it was so significant. What's illustrated in the… Call that a code or a unique ID. Smith does require that additional step, though, right? Smith requires a logging in. What you're saying is that you're arguing that Smith has a unique ID that's personal to the individual but doesn't differentiate the message with respect to other people. Well, it wouldn't be a unique code, and it certainly wouldn't be in an address of information in the system, right? In other words, what it would do is it would say, you have message number 7 from Pattern. And then, now, there could be lots of message number 7s from Pattern. But once you log in… And so the notification doesn't identify a message uniquely at all, right? It provides data about a message, descriptive data. What allows you to find the message is the fact that you log on, you have a password. And now it knows, okay, we're talking about Joffrey's inbox. And so Joffrey has… But there must be a unique identifier to find it within that inbox, right? No, Your Honor, because if you think about, again, there could be a hundred different people getting message number 7 from Pattern. Remember that you're addressing what I said. What I'm saying is you say it sends you to your inbox, the individual's inbox, but with respect to that individual inbox, there must be a unique identifier. But the notification doesn't send you to your inbox. The only thing that sends you to your inbox is that you, after getting the notification, you have a password. You log on. Now it knows who you are. And so when it says message number 7 from Pattern, it says, oh, okay, it's not just message number 7 from Pattern, it's message number 7 from Pattern in Joffrey's inbox. Okay? Now there could be message number 7 from Pattern in Boswick's inbox or in Criven's inbox. All right? And the fact is that if you forward, if you... I see that I'm about to run out of time. You're about to run out of time. The point is that, and this is why these examples are so illustrative of the many people getting the message ID or forwarding the message ID. The message ID uniquely identifies a piece of information. The message ID Smith does not disclose that, does not require it, would not teach it, teaches away from it. Okay. Thank you, Mr. Pennington. Thank you. Thank you both counsel. Case is submitted. And that concludes our session for today. All rise. The honorable court has adjourned until tomorrow morning at 10 a.m.